COMMONWEALTH *vs.* KEITH NURSE.

No. 99-P-461.

Plymouth. March 21, 2000. - August 24, 2000.

Present: KASS, GILLERMAN, & JACOBS, JJ.

*Rape. Evidence,* Fresh complaint, Failure to produce witness.

This court concluded that a complaint of rape, made by an adult, assumed to be of normal intelligence and emotional state and not demonstrated to be subject to powerful family or community forces or intimidation by the abuser, was not fresh but stale, as matter of law. [38-40]

At the trial of a rape indictment, the erroneous admission of evidence that was not "fresh complaint" was not harmless and a new trial was required. [40]

At the trial of a rape indictment, the judge properly disallowed defense counsel's request to comment on the Commonwealth's failure to call a witness who had not responded to a summons by the defense to testify at trial. [40-41]

INDICTMENT found and returned in the Superior Court Department on August 2, 1993.

The case was tried before *John A. Tierney,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

KASS, J. While in the custody of police on a charge of prostitution, Tracy Jones[1] complained of a rape that had occurred close to three months (more precisely, eighty-three days) earlier. The police detective to whom she confided the details of that sexual assault was permitted, over objection, to testify in full detail before a jury in Superior Court about what Jones had told him. The defendant was convicted of rape. We conclude that, in the circumstances, Jones's complaint to the detective was not reasonably prompt, and that the detective's account of his

---

[1] A pseudonym.

conversation with her should not have been received in evidence as fresh complaint. Accordingly, we reverse the judgment of conviction.

1. *The evidence at trial.* Jones's description of the rape at trial was that it occurred in the early morning on a Sunday during the first week of April. Jones had been out buying drugs, "did 'em," i.e., had used them, and was walking to what at the time was home, the apartment of her friend "Buttons" Hagler. En route, she noticed a man, whom she identified at trial as the defendant, in a red "sports car-looking car." The defendant and Jones negotiated an act of fellatio for $20 to $25, and she went with him in his car to where this might be done discreetly. Jones, who was a prostitute, had a favorite spot, but the man wished to go to his location of choice. When the defendant directed that they leave the car, on the ground that it belonged to his girlfriend and he did not want to risk soiling it, Jones became uneasy.

Jones was justly apprehensive. Once they were outside the car, the defendant threw her to the ground, put his foot on her throat, demanded oral sex, called her "a cunning bitch, a whore," and said he was going to kill her. Jones got on her knees and performed fellatio. After about two minutes the defendant ejaculated. Then he choked her. Jones told the defendant that someone was coming. He looked around and told her to "run this way," while he went the opposite way toward his car. Jones first ran to a bus stop, but no bus was due for fifteen minutes, and she continued on. Jones then encountered Arthur Dias, who was outside his house on the way to work, and she asked him for a ride. Once inside Dias's truck, she told him she had just been raped behind a nearby abandoned building. He suggested driving her to the police station, but she declined and asked to be taken home. There, Jones testified, she told her friend Hagler that she had been raped and almost killed. Hagler did not appear as a witness.

Almost three months later, on June 26, 1993, Jones was arrested after getting into a car with an undercover policeman and discussing sex for a price. On the way to the police station, she expressed wonder to Detective Robert Leedburg, who was taking her there, that the police were "after me when he should be after the guy who raped me." At the police station, she saw a picture of the defendant on a poster and identified the photograph as of her assailant. Later at the police station, she made a confirmatory identification from a photographic array.

At trial, the Commonwealth buttressed the testimony of Jones with fresh complaint evidence from Dias. He testified that Jones had told him she had just been raped and where. Dias was quite certain that the day was not a Sunday as he had assisted Jones on a work morning and did not go to work on Sunday mornings. When the Commonwealth offered to have Detective Leedburg testify as to what Jones had said to him in the police cruiser, defense counsel objected "to any testimony from this officer under the theory of fresh complaint." More specifically, defense counsel said, "I'm asking the [c]ourt to rule that this testimony is not fresh, that the complaint is not fresh. It does not fall under any theory of an exception to the hearsay rule." The trial judge overruled the objection and Detective Leedburg proceeded to repeat in detail the rape as Jones had described it, plus a detail (involving the defendant having put his knee on Jones's chest and then hitting her several times) that had not been included in Jones's account.

2. *The fresh complaint.* Fresh complaint has been the object of frequent appellate analysis and commentary in the past decade. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 507-511 (1991); *Commonwealth* v. *Lavalley*, 410 Mass. 641, 642-646 (1991); *Commonwealth* v. *Licata*, 412 Mass. 654, 656-660 (1992); *Commonwealth* v. *Peters*, 429 Mass. 22, 27-31 (1999); *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 623-627 (1987); *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 412-414 (1991) (see Appendices A and B in which cases are collected); *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 490-492 (1991); *Commonwealth* v. *Johnson*, 35 Mass. App. Ct. 211, 215-217 (1993); *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. 341, 346-347 (1999). It is instructive also to consult one of the original decisions on this evidentiary question, *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898).

Several guiding principles emerge from the decisional history. There is unease about the historical assumption behind the fresh complaint doctrine, that a rape complainant who has not raised an immediate hue and cry is suspect. *Commonwealth* v. *Licata*, 412 Mass. at 658. *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 412. We accept fresh complaint as an exception to the hearsay rule, however, because rape cases are generally without percipient third party witnesses and, therefore, present credibility duels between alleged attackers and alleged victims. Prompt complaint, by reason of its spontaneity, is taken as reliable for the

limited purpose of corroborating the complainant's account. While " 'freshness' is not solely a question of the clock or calendar, yet the passage of time is surely important: as time extends itself, a complaint loses character as a spontaneous accusation after grievous wrong; moreover, opportunity grows for invention or distortion of an event by mistake, twist of memory, fantasizing, contrivance, etc." *Id.* at 413.

In cases of complaint of rape by children, the tolerance of what is fresh complaint has become quite extended in recognition of the child's fear, repression, threats of coercion, psychological control by the abuser, or lack of understanding of what happened. See, e.g., *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 222 (1991) (nine months); *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. at 489-490 (two years). Similarly, in the case of adults, we have recognized a complainant may be subject to confusion and fear, *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. at 626-627, or cultural pressures, *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. at 346-347, that warrant tolerance of less than immediate complaint. In *Lagacy* we thought a delay of twenty-three days approached "the extreme" of tolerable delay. In the *Kruah* case, however, we accepted a fifteen-month delay because the victim was subject to pressures of her closely knit immigrant community not to bring shame upon them by complaining against the defendant, who was a powerful member of that community.

The Commonwealth argues that the pressure on the complainant in the instant case was that a prostitute is likely to see contact with the police as trouble and that, therefore, Jones's disinclination to complain to the police about the rape (it will be recalled that Dias offered to drive Jones to the police station and that she declined) was reasonable. Once she was in the hands of the police anyway on June 26, 1993, Jones no longer felt that inhibition and felt free to talk about the April rape.

Assuming inhibition by a prostitute about contact with the police, in the instant case Jones had earlier been in the custody of the police, in connection with a drug offense, two weeks after the sexual assault of which she complained, and long before the brush with the police in June. Jones said nothing then about the rape, even though at that time keeping the police at arm's length was academic; she was in their arms. The disinclination of a prostitute to talk to the police, particularly on the facts of this case, is too marginal a rationalization to extend

what would be a reasonable time for reporting a rape to the police.

We think that in the case of an adult of normal intelligence and emotional state, not subject to powerful family or community forces, or intimidation from the abuser, a complaint of rape made eighty-three days after the event, as matter of law, is not fresh, but stale. To receive evidence of a complaint to another in such circumstances would proceed far down the path of eliminating any criterion of promptness from "fresh complaint," would run the risk of fabrication, and would eviscerate the rule as it is generally understood. We are of opinion that this is a case of extreme delay in which the evidence of Jones's complaint to Detective Leedburg should have been excluded as matter of law. The error was not a harmless one as, unlike the fresh complaint evidence given by Dias, the testimony drawn from Detective Leedburg, as we previously observed, repeated all the details that Jones had described, and then some. Nor, as the Commonwealth argues, was Leedburg's testimony about what Jones said to him admissible on the ground that defense counsel's cross-examination of Jones had opened it up. That cross-examination did not delve into what Jones had said to Leedburg about the rape and, therefore, did not establish a basis for redirect examination on the subject.

3. *Comment on missing witness.* Against the possibility that the issue may recur at a new trial, we consider the defendant's claim that the trial judge erred in not permitting defense counsel to comment on the failure of the Commonwealth to call Buttons Hagler, to whom Jones said she reported the rape as soon as she got home after the assault. Defense counsel had hoped to call Hagler — and so told the jury in his opening statement — to testify that she had not heard from Jones about the rape and that, indeed, she did not know Jones. Hagler did not respond to her summons. Faced with resting his case without this tactical trump, defense counsel sought to comment in closing that the jury should remark the failure of the Commonwealth to present Hagler as a witness to confirm her conversation with Jones.

The trial judge acted within his discretion in disallowing such a comment. It was the defense that had said it would produce favorable testimony and it would not have been fair to allow a comment that implied the Commonwealth had a reason to call Hagler and had failed to do so because her testimony would be unfavorable. The prosecutor did not comment in his closing

argument about the defendant's failure to produce Hagler. For recent cases considering the missing witness problem, see *Commonwealth* v. *Richardson*, 429 Mass. 182, 183-185 (1999); *Commonwealth* v. *Spencer*, 49 Mass. App. Ct. 383, 386-387 (2000); *Commonwealth* v. *Smith*, 49 Mass. App. Ct. 827, 829-833 (2000).

*Judgment reversed.*

*Verdict set aside.*