UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-7520
(CA-98-74-5)

James Quinn,

Petitioner - Appellant,

versus

William S. Haynes, etc., et al.,

Respondents - Appellees.

O R D E R

The court amends its opinion filed December 6, 2000, as follows:

On page 17, continuation of footnote 11, second full paragraph, line 13 -- the sentence is corrected to begin "Where these details are independently admissible, however ...."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

JAMES QUINN,
Petitioner-Appellant,

v.

WILLIAM S. HAYNES, Warden,

Huttonsville Correctional Center;
DARRELL V. MCGRAW, JR., Attorney
General of the State of West
Virginia,
Respondents-Appellees.

No. 99-7520

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-98-74-5)

Argued: September 28, 2000

Decided: December 6, 2000

Before WILKINS, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Wilkins and Judge Traxler joined.

_____

COUNSEL

ARGUED: David Robert Bungard, ROBINSON & MCELWEE,
L.L.P., Charleston, West Virginia, for Appellant. Leah Perry Macia,
Assistant Attorney General, Charleston, West Virginia, for Appellees.

**ON BRIEF:** Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Appellees.

_____

## OPINION

WILLIAMS, Circuit Judge:

On October 6, 1994, James Quinn was convicted in the Circuit Court of Wetzel County, West Virginia of the felony offense of sexual abuse by a custodian, in violation of W. Va. Code § 61-8D-5 (1986). After unsuccessfully challenging his conviction on direct review in the West Virginia state court system, Quinn filed a petition for habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Northern District of West Virginia against William S. Haynes, Warden of Huttonsville Correctional Center ("Haynes"),[1] claiming that the trial court denied Quinn his Sixth Amendment rights, secured by the Fourteenth Amendment, by limiting his ability to present evidence related to impeaching the credibility of the key prosecution witness.[2] The district court granted summary judgment on behalf of Haynes, holding that the West Virginia Supreme Court of Appeals's ruling affirming his conviction neither violated clearly established Sixth Amendment jurisprudence nor constituted an unreasonable application thereof. For the reasons that follow, we affirm the district court's judgment.

I.

In November of 1992, T.M.[3] was five years old and lived with her mother and several siblings in Wetzel County. James Quinn is the father of one of T.M.'s siblings. Sometime in early November, Quinn

_____

[1] Quinn also named Darrell V. McGraw, Jr., Attorney General of the State of West Virginia, as a defendant, but McGraw was dismissed from the case on September 21, 1999.

[2] Throughout both direct and habeas review, Quinn has challenged only his conviction and has not presented any challenge to his sentence.

[3] The minor victim has been called T.M. throughout the proceedings to protect her identity, and we will preserve this practice.

2

babysat the children overnight while their mother was away. A couple of weeks later, T.M. told her aunt that she had been sexually molested by Quinn during that evening. At trial, T.M. testified that Quinn took off her panties, touched her between her legs with his hand, tried to hurt her "between [her] privates" with "[his] private thing," and that Quinn tried to put his "private thing" in her "private thing." (J.A. at 208). T.M.'s testimony was the State's only evidence of the abuse, as there were no eyewitnesses, and no medical evidence was admitted to corroborate T.M.'s testimony.

Prior to trial, Quinn filed a motion seeking permission to cross-examine T.M. about the fact that T.M. had made similar accusations of sexual abuse against two of her step-brothers and her grandfather. Quinn sought to impeach the minor victim's general credibility by attacking the victim's allegations of sexual abuse by others through cross-examination of the victim as to each alleged specific act and by presenting the testimony of each alleged perpetrator denying his alleged conduct (collectively, "proffered impeachment evidence"). The Guardian Ad Litem appointed to represent T.M. opposed Quinn's motion, arguing that West Virginia's rape shield law, W. Va. Code § 61-8B-11 (1986), prohibited the admission of the impeachment evidence offered by Quinn.

During an in limine hearing based upon Quinn's motion to admit the impeachment evidence, the trial court considered arguments regarding the relevance of Quinn's proposed line of questioning. After determining that such evidence only would be admissible if the allegations were false, the trial court allowed Quinn's attorney to proffer evidence demonstrating the falsity of T.M.'s other allegations of sexual abuse.

Quinn's attorney was able only to submit the simple denial testimony of those accused as evidence of falsity of T.M.'s other allegations. As part of his proffer of evidence, Quinn had T.M.'s psychiatrist testify outside the presence of the jury. During this testimony, the trial court specifically asked the psychiatrist if she had any reason to disbelieve T.M.'s other allegations, and the psychiatrist replied, "[N]o." (J.A. at 344). Quinn's proffer revealed that Quinn had no proof of falsity, other than the mere denials of those accused, and sought to cross-examine T.M. to uncover evidence that would support

3

Quinn's speculation that the other allegations were false. Ultimately, the proffered evidence established only that T.M. had made the other allegations to several different people and never had recanted the allegations or admitted their untruth.**4** Additionally, Quinn's proffered line of questioning required the introduction of extrinsic evidence as part of his impeachment of T.M.'s general credibility.

After argument and briefing, the trial court denied Quinn's motion for the requested presentation of impeachment evidence, ruling that Quinn failed to produce sufficient evidence of falsity. Without such a showing, the trial court held that the evidence of other allegations of sexual assault fell within the protection of West Virginia's rape shield law.**5** As to Quinn's proffered denial testimony, the trial court

_____

**4** T.M. told the stories of the other assaults to at least four people--her psychiatrist (Mary Elizabeth Hoard), the social worker assigned to the case (Mickey Hall), the doctor assigned to establish T.M.'s competency to testify (Dr. Charles Hewitt), and her grandmother (Wilma Coen).

**5** Generally, West Virginia's rape shield law prohibits inquiry at trial into the alleged victim's sexual conduct with other individuals. See W. Va. Code § 61-8B-11 (1986). The relevant portions of the statute read:

> § 61-8B-11. Sexual offenses; evidence.
>
> (a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.
>
> (b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.
>
> Id.

4

held that the simple denial testimony did not demonstrate falsity and, if allowed, would result in mini-trials on the other allegations of sexual abuse, which would ultimately distract the jurors and possibly result in psychological harm to T.M.[6]

The jury convicted Quinn of one count of sexual abuse by a custodian in violation of West Virginia Code § 61-8B-5 (1986).[7] Quinn was sentenced to an indeterminate period of incarceration of five to fifteen years. Quinn timely appealed the denial of his proffered impeachment evidence to the West Virginia Supreme Court of Appeals. See State v. Quinn, 490 S.E.2d 34 (W. Va. 1997). That court upheld the limitation on the scope of Quinn's proffered impeachment evidence, holding that although false accusations of sexual abuse are not protected by West Virginia's rape shield law, Quinn had not introduced evidence sufficiently demonstrating the falsity of T.M.'s other allegations. See id. at 41. In its ruling, the state supreme court developed a standard that requires "strong and substantial proof of the actual falsity of an alleged victim's other statements" before such statements will be admissible. Id. at 40. Because it noted that, with respect to the proposed cross-examination of T.M., Quinn had failed to "point to any evidence showing that such an admission [of falsity] might be forthcoming, nor to a substantial impossibility, discrepancy or other defect in T.M.'s statements that provided a strong indicium of the statements' falsity," the state supreme court held that the trial court properly limited the cross-examination. Id. at 41 n.10.

On June 15, 1998, Quinn filed for habeas corpus relief in the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C.A. § 2254. In his petition for habeas relief, Quinn argued that the exclusion of his proffered impeachment evidence violated his Sixth Amendment Confrontation Clause right. The district court referred Quinn's case to a magistrate judge, who submitted a recommendation that Haynes's motion for summary judgment

_____

[6] In analyzing Quinn's request for the proposed cross-examination, the trial court noted T.M.'s "tender years and the possibility for further psychological damage." (J.A. at 55.)

[7] Quinn also was charged with sexual assault in the first degree in violation of West Virginia Code § 61-8B-3 (1986), but the jury acquitted him of this charge.

5

be granted and Quinn's motion for an evidentiary hearing be denied. After a de novo review of the magistrate judge's findings, the district court adopted the recommendation. The district court held that the state supreme court's exclusion of Quinn's proffered impeachment evidence regarding T.M.'s other accusations of sexual abuse neither violated clearly established federal law nor constituted an unreasonable application of such law.

On October 25, 1999, Quinn requested that the district court issue a certificate of appealability pursuant to 28 U.S.C.A. § 2253(c) and Rule 22(b) of the Rules of Appellate Procedure. On November 3, 1999, the district court granted Quinn's request and issued a certificate of appealability for Quinn's Sixth Amendment claim as it pertained to the state supreme court's limitation on Quinn's right to present the proffered impeachment evidence. In reviewing the district court's holding, we must determine whether the state supreme court's restriction on Quinn's presentation of impeachment evidence through the application of its rape shield law was objectively unreasonable in light of controlling Supreme Court precedent.

II.

Before turning to the merits of Quinn's argument, we first must consider whether we lack jurisdiction to hear Quinn's appeal due to Quinn's failure to file a timely notice of appeal to this Court. Although neither party addressed this issue, we are duty-bound to clarify our subject matter jurisdiction because questions of subject matter jurisdiction "`concern the court's very power to hear the case.'" Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n. 4 (4th Cir. 1999) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.30 [1] (3d ed. 1998)); see also Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985) ("Although plaintiffs have not questioned the district court's jurisdiction, lack of subject matter jurisdiction is an issue that requires sua sponte consideration when it is seriously in doubt.").

Federal Rule of Appellate Procedure 4(a), which governs appeals in civil cases, provides that a party has thirty days after the entry of the district court's final judgment or order to note an appeal. Fed. R. App. P. 4(a)(1). The district court issued its memorandum opinion

6

and order on September 21, 1999. Quinn filed a motion for a certificate of appealability on October 27, 1999. Quinn subsequently filed a notice of appeal on November 10, 1999. Neither his certificate of appealability nor his notice of appeal was filed within thirty days of the district court's final order of September 21, 1999, as required by Rule 4(a)(1).

The timely filing of the notice of appeal is "mandatory and jurisdictional." United States v. Robinson, 361 U.S. 220, 229 (1960). Nevertheless, we have jurisdiction to hear this appeal because the district court failed to comply with the "separate document" requirement of Rule 58 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 58 ("Every judgment shall be set forth on a separate document."). Instead of entering judgment on a separate document, the district court issued only a document styled as a Memorandum Opinion and Order Accepting and Adopting Proposed Findings of Fact and Recommendation for Disposition of Magistrate Judge. See Fed. R. Civ. P. 58 notes to 1963 amendment ("The amended rule eliminates these uncertainties by requiring that there be a judgment set out on a separate document--distinct from any opinion or memorandum--which provides the basis for the entry of judgment.").

The consequences of the district court's failure to comply with Rule 58 are well-established: When a district court does not enter its final judgment on a separate document, the time to appeal does not begin to run. See Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 689 (4th Cir. 1978).

While the absence of a properly-entered judgment disposes of the contention that the appeal was untimely filed, it raises the further question of whether this Court may consider the merits of the appeal without first requiring that the State obtain a judgment that formally complies with Rule 58. In Caperton, we resolved this issue and held that this Court has subject matter jurisdiction to hear an appeal, despite the lack of conformity with Rule 58, when a three-factor test is met: "(1) `the District Court clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case'; (2) a judgment of dismissal `was recorded in the clerk's docket'; and (3) the appellees `did not object to the taking of the appeal in the absence of a separate judgment.'"

7

Id. at 690-91 (quoting <u>Bankers Trust Co. v. Mallis</u>, 435 U.S. 381, 387-88 (1978)). In this case, the memorandum opinion and order issued by the district court clearly evidenced the court's intent that it serve as the final decision in the case, the district court's memorandum opinion and order was entered on the docket on September 21, 1999, and Haynes has not objected to the taking of this appeal in the absence of the separate document. Therefore, this Court has subject matter jurisdiction to hear the merits of this appeal.

III.

Turning to the merits, Quinn argues that the state court's limitation of his proffered impeachment evidence violated his Sixth Amendment right under the Confrontation Clause. The parties agree that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, governs review of this case. Pursuant to that statute, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.A. § 2254(d)(1) (West Supp. 2000). Accordingly, we first note that the West Virginia Supreme Court of Appeals clearly adjudicated Quinn's Sixth Amendment claim on its merits.**8** Therefore, we turn to whether its adjudication is contrary to

_____

**8** Quinn concedes that the state supreme court adjudicated his Sixth Amendment claim on its merits by his reliance on the standard of review under § 2254(d)(1) in his briefs presented to this Court. Moreover, at oral argument, Quinn confirmed that he presented the state supreme court with the "almost identical" Sixth Amendment argument presented before this Court. The state supreme court accepted briefing and oral arguments on that issue. With the Sixth Amendment claim squarely before it, the state supreme court rejected Quinn's requested relief. <u>See State v. Quinn</u>, 490 S.E.2d 34, 42 (W. Va. 1997). While the state supreme court stated that its discussion was confined to the applicability and effect of its rape shield law, it analyzed its falsity standard using cases that squarely address the federal Confrontation Clause issue. <u>See id.</u> at 42 ("Nor do we perceive <u>any grounds</u>, under the facts of this case, that would require the admission of such evidence under our rape shield law." (emphasis added)); <u>id.</u> at 42 n.13 ("[T]he provisions of West Virginia's rape shield law are constitutional under the provisions of the Sixth Amendment to the United States Constitution . . . .").

8

clearly established federal law. If there is no directly controlling Supreme Court precedent for purposes of conducting the "contrary to" prong, we then must analyze whether the precedent is applied in an objectively reasonable manner. See Williams v. Taylor, 120 S. Ct. 1495, 1522-23 (2000). We note that under section 2254(d), a writ may not issue simply because a federal court concludes, in its own judgment, that the state court decision applied federal law "erroneously or incorrectly." Id. at 1522. Rather, the state court's application must be objectively unreasonable.

A.

Under § 2254(d)(1), we must address whether the state court's interpretation of Quinn's Confrontation Clause rights under its falsity standard is "contrary to" federal constitutional standards, as articulated by Supreme Court precedent. A state court adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000).

No controlling Supreme Court precedent exists establishing the parameters of a criminal defendant's Confrontation Clause right to introduce impeachment evidence in the manner sought by Quinn. The Supreme Court has, however, addressed the Confrontation Clause implications of excluding impeachment evidence that tends to show bias or motive to fabricate charges. See, e.g., Olden v. Kentucky, 488 U.S. 227, 232-33 (1988); Davis v. Alaska, 415 U.S. 308, 315-16 (1974). For the "clearly established" prong to apply, the relevant Supreme Court precedent need not be directly on point, but must provide a "governing legal principle" and articulate specific considerations for the lower courts to follow when applying the precedent. See Williams, 120 S. Ct. at 1523. The issue, therefore, is whether the Supreme Court cases analyzing the Confrontation Clause implications of excluding cross-examination on bias and motive to fabricate charges provide any "governing principles" that resolve this case. For the reasons that follow, we hold that such cases do not.

In cases involving bias or motive to fabricate charges, the Supreme Court has held,

9

> [a] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (quoting Davis, 415 U.S. at 318); see also Olden, 488 U.S. at 231 (citing Van Arsdall and Davis for the proposition that the exclusion of impeachment evidence related to motive to fabricate charges violates the Confrontation Clause). The distinction between impeachment evidence proving bias and impeachment of general credibility is important because generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, see W. Va. R. Evid. 608,[9] but no such limit applies to credibility attacks based upon motive or bias. See W. Va. R. Evid. 404(b); 4 Jack B. Weinstein et al., Weinstein's Federal Evidence § 607.04[1] (2d ed. 2000) ("Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.") (footnote omitted); see also Davis, 415 U.S. at 317 ("[T]he jurors were entitled to have the benefit of the defense theory [of witness bias] . . . so that they could make an informed judgment as to the weight to place on [the witness's] testimony. . . ."); Chavis v. North Carolina, 637 F.2d 213, 225 (4th Cir. 1980) (recognizing that Davis stands for the principle that "[o]ne of the most important factors affecting credibility is the presence of any bias, prejudice or incentive on the part of a witness to favor one party to the litigation").

In Davis, one of the leading Confrontation Clause cases regarding the right to cross-examination for the purpose of impeachment, the Court noted this distinction between attacks on the general credibility

_____

[9] West Virginia's Rules of Evidence 608 and 404(b) mirror their counterparts in the Federal Rules of Evidence.

10

of the witness and a more particular attack on credibility "effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Davis, 415 U.S. at 316. Justice Stewart, in his concurring opinion, emphasized "that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications." Id. at 321 (Stewart, J., concurring); see also Hughes v. Raines, 641 F.2d 790, 793 (9th Cir. 1981) (drawing the same distinction between general credibility attacks and attacks on motive or bias and applying it to distinguish Davis from attempts to introduce prior false allegations of sexual abuse).

The object of Quinn's intended presentation of impeachment evidence was to attack T.M.'s general credibility, rather than her potential bias or motive to fabricate charges. Therefore, Davis does not control our resolution of whether West Virginia's limitation on Quinn's presentation of impeachment evidence pursuant to its rape shield law violated Quinn's Confrontation Clause right.

Davis and its progeny are also distinguishable because they involve impeachment based upon credibility-impugning facts that were not in dispute. For example, in Olden v. Kentucky, the Supreme Court held that the trial court violated the defendant's Sixth Amendment rights when it limited cross-examination of the victim to preclude inquiry into the victim's motive to fabricate the allegations of sexual assault. See Olden, 488 U.S. 227, 231 (1988). The defense's theory in Olden was that the alleged victim, who was white, had consensual sex with the defendant, who was black, and then fabricated the rape charges against the defendant to protect her ongoing relationship with her live-in boyfriend. See id. at 230. The trial court held that the potential prejudice created by exposing the interracial relationship between the alleged victim and the alleged perpetrator outweighed its probative value to the defendant's case. See id. at 230-31. The Supreme Court reversed the lower court, stating that the "[s]peculation as to the effect of the jurors's racial biases cannot justify the exclusion of cross-examination with such strong potential to demonstrate the falsity of [the witness'] testimony." Id.

11

Olden initially is distinguishable from the present case because it involves impeachment based on evidence of motive to fabricate charges, rather than an attack on general credibility, as discussed at length above. See supra at 9-11. Additionally, in Olden, the state court, in excluding the cross-examination, noted the undisputed fact that the alleged victim was involved in an interracial relationship and that such evidence was relevant to prove motive to fabricate the charges. See Olden, 488 U.S. at 232; see also Davis, 415 U.S. at 313-15 (involving a situation in which the fact of the juvenile's probationary status, which would arguably lead him to testify in the government's favor, was not in dispute); Van Arsdall, 475 U.S. at 679 (noting that the government conceded it had made a promise to drop public intoxication charges against the witness in exchange for his testimony).

These cases addressed established, undisputed facts. The only issue in each case was whether the prejudice of permitting cross-examination outweighed the probative value of the factual evidence. In Quinn's case, however, the entire crux of the issue is whether the credibility-impugning fact existed at all. A true allegation of another sexual assault is completely irrelevant to credibility and offends the clear language of West Virginia's rape shield law, see W. Va. Code § 61-8B-11 (1986), which is why a threshold showing of falsity ultimately is required.

To the extent that the Davis and Olden line of cases leaves open the issue of a defendant's right to impeach the general credibility of a witness regarding a contested fact, those cases certainly do not "clearly establish" Quinn's asserted Sixth Amendment right. See Vick v. Williams, No. 99-7406 (4th Cir. Nov. 20, 2000) (noting that when Supreme Court precedent reserves an issue, that precedent cannot represent "clearly established law" on that issue). As we stated in Green v. French, 143 F.3d 865 (4th Cir. 1998), to hold that an issue left open by the Supreme Court represents "clearly established law" as to that issue "would transform habeas review under amended 2254(d)(1) into a one-way ratchet whereby a state court must resolve all open questions of federal law in the defendant's favor in order to prevent the conviction or sentence from being vacated on habeas review." Green, 143 F.3d at 880.

12

Because there is no Supreme Court precedent that provides a governing legal principle for this case, we turn to the issue of whether West Virginia's limitation of Quinn's proposed impeachment evidence relating to T.M.'s other allegations of sexual assault, pursuant to its rape shield law, constituted an unreasonable application of Sixth Amendment precedent. See id. (holding that if there is no "directly controlling Supreme Court precedent," this Court must analyze whether the precedent is applied in a "patently unreasonable way.").

B.

The specific issue that we next must determine is whether the state supreme court's refusal to allow cross-examination and denial testimony regarding T.M.'s other allegations of sexual assault, pursuant to West Virginia's rape shield law, is an unreasonable application of relevant Supreme Court Confrontation Clause precedent. See Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). Because Quinn was able only to produce simple denial testimony in support of his claim that T.M.'s other allegations of sexual assault were false, we need only address the question of whether, in light of Quinn's proffer of simple denial testimony, West Virginia unreasonably applied Confrontation Clause precedent when it applied West Virginia's rape shield law to limit Quinn's proposed impeachment evidence. We need not address the broader issue of whether West Virginia's standard of strong and substantial proof of falsity is objectively reasonable in light of relevant Supreme Court precedent.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has made clear that the right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, see Pointer v. Texas, 380 U.S. 400, 403 (1965), "means more than being allowed to confront the witness physically," Davis v. Alaska, 415 U.S. 308, 315 (1974). Indeed, the Court has noted that "`[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Id. at 315-316 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). Accordingly, it is clear from Supreme Court precedent that the Sixth Amendment guarantees the right of a criminal defendant to reasonable cross-examination,

13

when otherwise appropriate, for the purpose of impeaching the credibility of key witnesses. See Olden v. Kentucky, 488 U.S. 227, 232 (1988); Davis, 415 U.S. at 315-16. It does not follow, however, that the Confrontation Clause of the Sixth Amendment prevents a trial court from imposing any limits on the scope of defense counsel's cross-examination and presentation of evidence related to the impeachment of a key prosecution witness's credibility. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986).

In the exercise of his Confrontation Clause right, Quinn must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." See Chambers v. Mississippi, 410 U.S. 284, 302 (1973). In other words, the Confrontation Clause does not trump established rules of evidence, but rather must yield to such rules when their application is reasonable. See Taylor v. Illinois, 484 U.S. 400, 410-11 (1988) ("The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on that right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments . . . .").

In accordance with these principles, it is clear that the state supreme court did not apply federal law in an objectively unreasonable manner merely by relying upon its evidentiary rules to limit Quinn's right to present evidence in support of his defense. Quinn argues, however, that Sixth Amendment precedent mandates that a trial court allow impeachment evidence regarding the victim's other allegations of sexual assault once the defendant proffers simple denial testimony of those accused because such simple denial testimony sufficiently proves the falsity of the victim's other allegations.[10] We,

_____

10 Quinn also argues that cross-examination of the victim and the presentation of simple denial testimony of those accused are the only meth-

14

therefore, must examine whether the state supreme court's use of its rape shield law to limit Quinn's proffered impeachment evidence, in light of the simple denial testimony, is an unreasonable application of relevant Supreme Court Confrontation Clause precedent.

As its articulated basis for requiring more than simple denial testimony to prove falsity, the state supreme court relied upon the purpose of its rape shield law, which is to protect victims of sexual abuse from protracted attacks on their character through evidence of prior sexual activity. See State v. Quinn, 490 S.E.2d 34, 40 (W. Va. 1997). The state supreme court noted that a requirement of sufficient proof of falsity "is necessary to reasonably minimize the possibility that evidence which is within the scope of [West Virginia's] rape shield law, W. Va. Code 61-8B-11 (1986), and West Virginia Rule of Evidence 404(a)(3) (1994), is not erroneously considered outside of its scope." Quinn, 490 S.E.2d at 40. Therefore, the state supreme court's holding requiring more than simple denial testimony to establish falsity was premised on its desire to properly implement its state evidentiary rule.

The United States Supreme Court has held that numerous state procedural and evidentiary rules control the presentation of evidence and do not offend a defendant's Sixth Amendment Confrontation Clause right. See, e.g., Michigan v. Lucas, 500 U.S. 145, 149-51 (1991) (upholding the notice-and-hearing provisions of Michigan's rape shield law); Taylor, 484 U.S. at 417 (upholding trial court's exclusion of the testimony of a key witness as a sanction for the defendant's violation of a state procedural rule requiring the defendant to identify a particular defense witness in response to a pretrial discovery

_____

ods whereby Quinn could demonstrate the falsity of the other allegations. We disagree. As illustrated by United States v. Stamper, 766 F. Supp. 1396 (W.D.N.C. 1991), aff'd 959 F.2d 231 (4th Cir. 1992), the falsity of the other accusations can be established by the alleged victim's own admission, prior to trial, that she had falsely accused others, or by proof of a motive to falsify accusations. See id. at 1401. Falsity also can be established by variations within the stories told to different people, medical evidence that contradicts another allegation, an admission of falsity during discovery, or proof that the accused was not physically present during the time of the alleged incident.

15

request); <u>United States v. Nobles</u>, 422 U.S. 225, 241 (1975) (upholding the exclusion of a defense witness because of the defendant's violation of a state procedural rule); <u>Chambers</u>, 410 U.S. at 302 ("In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."); <u>Washington v. Texas</u>, 388 U.S. 14, 23 n.21 (1967) (stating that the opinion should not be construed as disapproving testimonial privileges or nonarbitrary rules that disqualify those incapable of observing events due to mental infirmity or infancy from being witnesses).

In light of the fact that evidentiary rules inevitably limit the scope and nature of any criminal defense, the Supreme Court has established an analytical framework that courts should use when evaluating Confrontation Clause challenges based upon the exclusion of evidence. Pursuant to this framework, courts must determine whether the rule relied upon for the exclusion of evidence is "arbitrary or disproportionate" to the "State's legitimate interests."[11] <u>Lucas</u>, 500 U.S. at

_____

[11] Quinn argues that we should not perform the balancing test that Supreme Court precedent mandates, but we should conclude instead that Quinn alleges a per se violation of his Sixth Amendment Confrontation Clause right because of the uncorroborated nature of the child's allegations of sexual abuse. In other words, Quinn argues that when a sexual assault claim is uncorroborated, a criminal defendant has an unlimited right to cross-examine the victim about other sexual assault allegations and introduce extrinsic evidence related to such.

In response to Quinn's argument, we first note that the Supreme Court has rejected a per se approach to Confrontation Clause challenges involving the application of state evidentiary rules, instead holding that each Confrontation Clause issue must be decided upon the basis of the legitimate interests underlying the implementation of that evidentiary rule. <u>See Michigan v. Lucas</u>, 500 U.S. 145, 151-52 (1991); <u>cf. Olden v. Kentucky</u>, 488 U.S. 227, 233 (1988) (listing the lack of corroboration as one element in its harmless error analysis). To treat the absence of corroboration as dispositive would undermine the Supreme Court's holding in <u>Lucas</u>. Additionally, such a holding would not afford proper deference to West Virginia's state law, which allows convictions for sexual offenses to be obtained upon the uncorroborated testimony of the victim. <u>See State v.</u>

16

151; see also Rock v. Arkansas, 483 U.S. 44, 55 (1987) ("[R]estrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional

_____

George W.H., 439 S.E.2d 423, 436 (W. Va. 1993) (holding that a "defendant can be found guilty of a sexually-related crime based upon the uncorroborated testimony of a victim").

We further note that T.M.'s allegations arguably were corroborated by her prompt complaints of her sexual abuse to her aunt and a social worker. See State v. Quinn, 490 S.E.2d 34, 43 (W. Va. 1997) (detailing the T.M.'s reports to her aunt and a social worker); State v. Golden, 336 S.E.2d 198, 203 (W. Va. 1985) (noting that West Virginia recognizes a rule, unique to sex offense cases, where the fact that a complaint is made soon after the alleged sex offense constitutes corroborative evidence of that offense). Other jurisdictions have noted that the permissible time frame for children to complain of sexual assault, and still have that count as a "prompt" complaint, can be quite long. Cf. Commonwealth v. Nurse, 734 N.E.2d 336, 339 (Mass. App. Ct. 2000) (stating that, "[i]n cases of complaint of rape by children, the tolerance of what is fresh complaint has become quite extended in recognition of the child's fear, repression, threats of coercion, psychological control by the abuser, or lack of understanding of what happened.") (citing Commonwealth v. Souther, 575 N.E.2d 1150, 1153 (Mass. App. Ct. 1991) (nine months); Commonwealth v. Hyatt, 579 N.E.2d 1365, 1368 (1991) (two years)).

The state supreme court held that T.M.'s aunt and the social worker's testimony did not satisfy the strictures of the prompt complaint exception to the hearsay rule because the testimony was impermissibly detailed. See Quinn, 490 S.E.2d at 43 n.16. It nevertheless allowed the testimony as prior consistent statements. See id. at 44. The West Virginia Supreme Court, however, did not hold that the evidence lacked corroborative value; rather, it held that the aunt's and social worker's testimony contained too many details of the assault to qualify for the independent prompt complaint exception to the hearsay rule. See id. at 43 n.16. The prompt complaint exception allows the admission into evidence of the bare fact of prompt outcry for corroborative purposes, but it does not extend to admission of details that would otherwise be barred for hearsay. Where these details are independently admissible, however, it would be illogical to hold that the fact of prompt outcry loses its corroborative value.

17

right to testify."). The rule relied upon by the West Virginia state courts for the exclusion of Quinn's proffered impeachment evidence was West Virginia's rape shield law. If the state supreme court's holding, that mere denials are insufficient to prove the falsity of other allegations of sexual assault under West Virginia's rape shield law, is arbitrary or disproportionate to the interests the rape shield law was designed to serve, the state supreme court applied federal law in an objectively unreasonable way when it limited Quinn's presentation of impeachment evidence regarding T.M.'s other allegations of sexual assault.

The Supreme Court has recognized that a state has a valid interest in protecting victims of sexual abuse from needless harassment, humiliation and "unnecessary invasions of privacy." Lucas, 500 U.S. at 150. Haynes notes that the State of West Virginia has a further special duty to implement its rape shield law to protect young children, like T.M., because harassing questioning could be more psychologically damaging to such a young child. The trial court recognized this special consideration when it expressed its reluctance to allow an in camera cross-examination of T.M. along the lines proposed by Quinn due to her "tender years and the possibility for further psychological damage." (J.A. at 55). Likewise, Chief Justice Workman's concurring opinion in Quinn noted, "[a]ny time we permit children to be cross-examined about allegations of prior abuse, the possibility of causing additional trauma to a child is unfortunately an attendant reality to any potential for the disclosure of truth." Quinn, 490 S.E.2d at 46 (Workman, C.J., concurring). Due to these concerns underlying the application of the rape shield law, West Virginia has a legitimate interest in requiring some showing of falsity to ensure that the protection of its rape shield law applies when such protection is warranted.

Upon review of the State's legitimate interests underlying the implementation of its rape shield law in this case, we do not believe that West Virginia's rejection of simple denial testimony as proof of falsity is arbitrary or disproportionate to the interests the rape shield law was designed to serve. See Lucas, 500 U.S. at 151; Rock, 483 U.S. at 55-56. In support of this holding, we note that the state supreme court's rejection of simple denial testimony to prove falsity did not exclude Quinn's proffered impeachment evidence regarding T.M.'s other allegations of sexual assault altogether; it merely

18

required Quinn to prove the relevance and reliability of the proffered impeachment evidence and the inapplicability of West Virginia's rape shield law before allowing the interests of the State to cede to those of the defendant. Contrary to Quinn's position, allowing simple denial testimony to establish falsity would inadequately take into account West Virginia's legitimate interest underlying the implementation of its rape shield law because simple denial testimony is inherently self-serving and unreliable.**12**

Additionally, Quinn was not denied the right to attack T.M.'s credibility altogether. Quinn was permitted to impeach T.M.'s credibility by the use of opinion and reputation testimony of other witnesses, which is the acceptable manner of attacking the witness's credibility under West Virginia's standard rules of evidence. See W. Va. R. Evid. 608(a). The jury heard T.M.'s grandmother and one of her step-brothers both testify as to their opinions that T.M. had a reputation for untruthfulness. Accordingly, Quinn was not denied the right to impeach T.M.'s credibility; he was merely denied the ability to impeach by bringing out specific instances of other accusations. The use of specific instances of conduct to impeach a witness's general credibility is prohibited by West Virginia's standard rules of evidence unless those instances are probative of truthfulness, and other allegations would only be probative of truthfulness if they were in fact false. See W. Va. R. Evid. 608(b). As the Supreme Court has emphasized, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in

_____

**12** Because it is obviously self-serving, jurisdictions that have considered the probative value of simple denial evidence in similar cases hold that it is completely insufficient to show probable falsity. See Hughes v. Raines, 641 F.2d 790, 792-793 (9th Cir. 1981) (holding that simple denial and non-prosecution for rape would not suffice to prove falsity); Commonwealth v. Hicks, 503 N.E.2d 969, 973 (Mass. App. Ct. 1987) (noting that the accused's testimony that he had not committed the rape was "clearly self-serving" and therefore did not establish falsity); State v. Anderson, 686 P.2d 193, 200 (Mont.1984) (stating that a "mere denial" does not establish falsity); State v. Kringstad, 353 N.W.2d 302, 311 (N.D. 1984) (holding accusee's proposed testimony denying prior allegation of rape insufficient to show falsity absent proffer of testimony to corroborate simple denial).

whatever way, and to whatever extent, the defense might wish." <u>Dela-ware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (per curiam).

In light of the concerns underlying the implementation of West Virginia's rape shield law, the particular concerns accompanying the cross-examination of a child-victim in a sexual offense case, and the other means afforded to Quinn to attack T.M.'s credibility, we believe the state supreme court's limitation of Quinn's proffered impeachment evidence pursuant to West Virginia's standard rules of evidence is neither arbitrary nor disproportionate to the State's legitimate interests underlying its implementation of its rape shield law. Because it is neither arbitrary nor disproportionate, the state supreme court did not unreasonably apply federal law when it applied the State's rape shield law to limit Quinn's proffered impeachment evidence.

Our agreement with the district court's holding that the state supreme court's limitation on Quinn's proposed impeachment evidence, pursuant to its rape shield law, rests upon an objectively reasonable application of federal law is further supported by the fact that most jurisdictions that have addressed the issue similarly require more than simple denial testimony as proof that another sexual assault accusation was false. <u>See Hughes v. Raines</u>, 641 F.2d 790, 792 (9th Cir. 1981) (applying a "shown convincingly" standard); <u>United States v. Stamper</u>, 766 F. Supp. 1396, 1403 n.3 (W.D.N.C. 1991), <u>aff'd</u> 959 F.2d 231 (4th Cir. 1992) (requiring "substantial proof of falsity"); <u>see also</u> Harriet R. Galvin, <u>Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade</u>, 70 Minn. L. Rev. 763, 861 (1986) (noting that "courts uniformly require that there be a strong factual basis for concluding that the prior accusation was false."). The fact that reasonable jurists also have required more than simple denial testimony as proof of falsity undermines a finding that West Virginia's decision to limit Quinn's proffered impeachment evidence regarding T.M.'s other allegations of assault is objectively unreasonable.[13] <u>See Vick</u>, No. 99-7406 ("[I]t would be judicial myopia of

_____

**13** We note that several courts and commentators have stated that other allegations of sexual assault, regardless of their falsity, are not particularly relevant to impeach a witness's credibility and, therefore, have concluded that the Confrontation Clause never demands the introduction of

20

the first order to ignore the force of consensus in assessing the objective reasonableness in the particular case.").

IV.

As the district court held, the decision of the West Virginia Supreme Court of Appeals to limit Quinn's proffered impeachment evidence is consonant with Supreme Court precedent interpreting the Sixth Amendment Confrontation Clause right. Requiring more than simple denial testimony ensures that West Virginia's rape shield law and other generally applicable rules of evidence and procedure are appropriately and consistently implemented. Because the state supreme court had a strong interest in applying its rape shield law to protect T.M. from irrelevant, harassing questioning regarding other allegations of sexual assault and because Quinn was not prohibited altogether from attacking T.M.'s credibility, the state supreme court's rejection of simple denial testimony under its rape shield law was proportionate to its legitimate interests underlying the State's adoption of its rape shield law. Rejection of simple denial testimony as sufficient proof of falsity in this case constitutes an appropriate balance between the competing interests of the State and the defendant. Therefore, the state supreme court's limitation of Quinn's right to present impeachment evidence regarding T.M.'s other accusations of sexual assault is

_____

such allegations. See United States v. Cardinal, 782 F.2d 34, 36 (6th Cir. 1986) (stating that allowing cross-examination of a victim about prior false allegations of sexual assault violates the spirit of the rape shield law); Hughes v. Raines, 641 F.2d 790, 793 (9th Cir. 1981) (noting that the rules of evidence generally prohibit drawing an inference that because a person "may have acted wrongfully on one occasion, he or she also acted wrongfully on the occasion at issue"); Quinn, 490 S.E.2d at 46 (Maynard, J., dissenting) (stating that he would disallow cross-examination of all prior false allegations because such inquiry is a "brutal attack on the general credibility of the child"); see also Hon. Denise R. Johnson, Prior False Accusations of Rape: Falsus in Uno, Falsus in Omnibus, 7 Yale J.L. & Feminism 243, 243-45 (1995) (arguing that courts should not automatically assume the relevance of prior false allegations but rather should conduct the type of contextual analysis used in other types of cases involving false allegations of crimes before admitting such allegations as impeachment evidence).

21

neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court. Accordingly, we affirm the district court's ruling dismissing Quinn's petition for habeas corpus relief.

AFFIRMED

22