**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JESSIE JAMES DALTON,

   Petitioner-Appellant,

v.

WALTER DINWIDDIE, Warden,

   Respondent-Appellee.

No. 07-6126

Western District of Oklahoma

(D.C. No. CIV-05-1182-HE)

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **KELLY**, **ANDERSON** and **McCONNELL**, Circuit Judges.

Jessie James Dalton, a state prisoner proceeding with retained counsel, seeks a certificate of appealability (COA) that would allow him to appeal from the district court's order denying his habeas corpus petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A). Because we conclude that Mr. Dalton has failed to make "a substantial showing of the denial of a constitutional right," we deny his request for a COA, and dismiss the appeal. 28 U.S.C. § 2253(c)(2).

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

## Background

In 2003, Jessie Dalton, along with Paul Duran, Jr., and Warren Plank, invaded the Ray family home, intending to rob it. They entered the home through the bedroom, where they encountered Darnell Ray and his wife, Stella Ray. After forcing the couple onto the bed, the three realized that the Ray's nineteen-year-old son, Billy Wayne Ray, was also home; one of the men went into the next room to find him while the other two remained in the bedroom. Upon hearing a shot, Mrs. Ray ran out of the bedroom, where she saw Billy Wayne struggling with another male over possession of a rifle. Billy Wayne told his mother that the men were "shooting blanks." Aplt.'s Br., App. 1, at 3. Another one of the robbers then came up behind Mrs. Ray and shot Billy Wayne in the head, killing him. The three robbers fled. At issue throughout the trial was who actually fired the lethal shot; both Plank and Duran, who pleaded guilty to robbery with firearms, testified at trial that Mr. Dalton was the shooter.

Mr. Dalton was charged with one count of first degree murder in violation of Okla. Stat. tit. 21 § 701.7(b). He was tried and convicted by an Oklahoma jury; the jury recommended that he be sentenced to life imprisonment without parole. The sentencing court accepted this recommendation.

Mr. Dalton filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA). The OCCA denied his claims on July 12, 2004. Mr. Dalton then filed a petition for a writ of habeas corpus in the United States District Court

for the Western District of Oklahoma. The district court referred the case to the magistrate judge, who found that all of Mr. Dalton's claims were without merit. The district court accepted the magistrate judge's recommendations and held that the state court had not arrived at a conclusion that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court also denied Mr. Dalton's motion for a certificate of appealability (COA).

Mr. Dalton requests that we grant a COA on whether the trial court's exclusion of impeachment evidence violated his Sixth Amendment confrontation rights. Because he fails to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we affirm the district court's denial of the COA.

## Discussion

The denial of a motion for relief under 28 U.S.C. § 2254 may be appealed only if the district court or this Court first issues a COA. 28 U.S.C. § 2253(c)(1)(A). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to

proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

Mr. Dalton argues that the trial court violated his Sixth Amendment confrontation rights when it excluded (1) evidence of Mr. Ray's prior convictions; (2) evidence of Mr. Ray's alleged bootlegging activity; and (3) a letter Warren Plank allegedly wrote stating that he did not know the identity of the shooter. All of this evidence would have been used for impeachment purposes. Mr. Dalton also complains about alleged violations of Oklahoma law. Habeas corpus relief, however, is not available for violations of state law, and we therefore do not consider these arguments. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 304, 315–16 (1981) (internal quotation marks omitted). A defendant, however, does not have an unlimited right to cross-examination, and the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) ("[T]he Confrontation Clause

guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

If the court finds that there has been a Confrontation Clause violation, it must then determine whether the error complained of "contribute[d] to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). The appropriate inquiry "is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 684.

Mr. Dalton complains that the trial court erred when it refused to let him cross-examine Mr. Ray about his prior 1970 conviction for assault and battery with a dangerous weapon and when it denied the admission of impeachment evidence about Ray's alleged bootlegging activity. According to Mr. Dalton, this impeachment evidence would have revealed Ray's bias to the jury and would have undermined his credibility. The trial court excluded the assault and battery conviction because it was over ten years old and was therefore stale, and because the evidence of "bootlegging" was not relevant to showing bias. The OCCA affirmed on direct appeal, holding that there was no abuse of discretion in excluding the conviction and that any bias Ray might have had was already "obvious from the losses he suffered . . . ." Aplt.'s Br., App. 1, at 8.

In *Davis v. Alaska*, the Supreme Court distinguished between a "general attack" on witness credibility and a more particular attack "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." *Davis*, 415 U.S. at 316; *see also Boggs v. Collins*, 226 F.3d 728, 736–37 (6th Cir. 2000). Only the latter form of questioning is clearly protected under the Sixth Amendment. *Id*. at 316, 320. It is within the trial court's discretion to limit more general attacks on the witnesses' credibility. *See Quinn v. Haynes*, 234 F.3d 837, 845 (4th Cir. 2000); *Boggs*, 226 F.3d at 739; *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996); *United States v. Bartlett*, 856 F.2d 1071, 1088–89 (8th Cir. 1988); *Hughes v, Raines*, 641 F.2d 790, 793 (9th Cir. 1981); *Mills v. Estelle*, 552 F.2d 119, 122–23 (5th Cir. 1977); *see also Davis*, 415 U.S. at 321 (Stewart, J., concurring) ("I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."). It is therefore acceptable under *Davis* for the trial court to impose reasonable restrictions on this type of cross-examination. 415 U.S. at 316.

Mr. Dalton did not intend to cross-examine Ray about his prior conviction in order to "establish bias against the defendant or for the prosecution." *Hughes*, 641 F.2d at 793. Rather, the assault and battery conviction "merely would have been [an attempt] to attack the general credibility of the witness on the basis of an

unrelated prior incident." *Id.*  Given that the conviction occurred thirty-seven years ago, the connection between this impeachment evidence and Ray's current credibility is minimal.  There was therefore no Confrontation Clause violation.

Mr. Dalton also argues that he should have been permitted to introduce impeachment evidence of Mr. Ray's alleged bootlegging activity.  This claim is without merit.  It is unclear why bootlegging indicates that Ray had a motive to identify Mr. Dalton as the shooter.  Additionally, unlike in cases where there is concrete evidence that the witness was actually involved in other criminal activity that might have prompted the witness to strike a deal with the prosecutor, *see Davis*, 415 U.S. at 316–18, Mr. Dalton concedes that he did not have any independent proof of Mr. Ray's bootlegging activity that he could use for impeachment.  Aplt.'s Br. 21.  It is well within the trial court's discretion to restrict accusations of illicit activity absent any corroborating proof; a different rule would allow defendants to lodge charges of impropriety at the witness in the hopes of tainting the jury's perspective.  We therefore deny a COA on this ground as well.

We similarly find that Mr. Dalton has not made a substantial showing of a violation of his constitutional rights based on the trial court's exclusion of the letter allegedly written by Warren Plank.  The prosecutor objected when defense counsel attempted to use the letter, in which Plank stated that he did not know the identity of the shooter, as impeachment, because it had not been disclosed to the

prosecution prior to questioning. Though defense counsel alleged that he only received the letter during the lunch break immediately prior to questioning, the trial court excluded the letter, as it had not been disclosed during an *in camera* hearing following lunch—a violation of Oklahoma's discovery code. Aplt.'s Br., App. 1, at 22.

Under Oklahoma's discovery code, a trial judge may exclude evidence when a discovery violation occurs. Okla. Stat. tit. 22 § 2002(E)(2), and this comports with the Confrontation Clause so long as the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 149, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). The district court's restriction here was reasonable in light of the competing state interests. "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system." *United States v. Nobles*, 422 U.S. 225, 241 (1975). The defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Instead of disclosing the letter upon first discovering it, counsel attempted to take the government by surprise by introducing the letter during cross-examination. This disregard for Oklahoma's evidentiary rules justifies the trial court's exclusion of the evidence. *See Taylor v. Illinois*, 484 U.S. 400, 417 (1988) (discovery violation amounted to "willful

misconduct" and was designed to obtain a "tactical advantage;" exclusion was therefore justified).

## **Conclusion**

Accordingly, we **DENY** Mr. Dalton's request for a COA and **DISMISS** this appeal.

Entered for the Court,

Michael W. McConnell
Circuit Judge