Filed:  December 17, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 98-3
(CA-95-883-3)

———————————

George Adrian Quesinberry, Jr.,

                              Petitioner - Appellant,

        versus

John Taylor, Warden, Sussex I State Prison,

                              Respondent - Appellee.

———————————

O R D E R

———————————

The court amends its opinion filed December 7, 1998, as follows:

On page 5, second full paragraph, line 3 -- the citation to "Pennsylvania v. Tinsley" is corrected to read "Pennsylvania v. Finley."

                              For the Court - By Direction

                              /s/ Patricia S. Connor
                                      Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGE ADRIAN QUESINBERRY, JR.,
Petitioner-Appellant,

v.

No. 98-3

JOHN TAYLOR, Warden, Sussex I
State Prison,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-95-883-3)

Argued: September 21, 1998

Decided: December 7, 1998

Before NIEMEYER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Butzner wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Albert Peter Brodell, WILLIAMS, MULLEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellant. Donald Richard Curry, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Patrick R. Hanes, WILLIAMS, MULLEN, CHRISTIAN &

DOBBINS, Richmond, Virginia; Donald R. Lee, Jr., MACAULEY, LEE & POWELL, Richmond, Virginia; Robert E. Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

George Quesinberry appeals the district court's denial of his petition for a writ of habeas corpus. Quesinberry was convicted of capital murder, breaking and entering with the intent to commit larceny and robbery, and the use of a firearm in the commission of a burglary, robbery, and capital murder. He was sentenced to death. We affirm the district court's judgment.

I

The facts are briefly outlined in this opinion; a full recitation may be found in the Virginia Supreme Court opinion on direct appeal. Quesinberry v. Commonwealth, 241 Va. 364, 368-70, 402 S.E.2d 218, 221-22 (1991). Absent exceptional circumstances, a state court's findings of fact are binding on this court. Sumner v. Mata, 449 U.S. 539, 546-47 (1981).

On September 25, 1989, Quesinberry and Eric K. Hinkle broke into the warehouse of Tri City Electric Company. Although they did not expect to find anyone at the warehouse, Quesinberry had with him a gun which he had taken from his step-mother's home. They arrived at the warehouse at approximately 6:00 a.m. and pried open a rear door with a screwdriver. While in the building Quesinberry and Hinkle stole a pair of walkie-talkies, three rolls of stamps, and rolls of coins.

When Thomas L. Haynes, the owner of Tri City, found the intruders in a warehouse office, he asked them what they were doing. Que-

2

sinberry told Hinkle to shoot Haynes, but Hinkle did not fire. Quesinberry took the gun from Hinkle and shot Haynes twice in the back. As Hinkle and Quesinberry were leaving the warehouse, they passed by Haynes, who was lying on the floor and tried to push himself up. Quesinberry hit Haynes on the head at least twice with the pistol.

Quesinberry and Hinkle learned of Haynes' death from a television report. Hinkle turned himself in later that day and gave a report that implicated Quesinberry. Quesinberry was arrested, and after being advised of his rights gave a detailed statement to the police which described his role in the murder.

On January 22, 1990, a Chesterfield County, Virginia, grand jury indicted Quesinberry for capital murder, breaking and entering with the intent to commit larceny and robbery, and the use of a firearm in the commission of burglary, robbery, and murder. On May 2, 1990, Quesinberry was convicted of all charges. On May 4, 1990, during the penalty phase of the trial, the jury found that the statutory aggravating circumstances of "future dangerousness" and "vileness" applied to Quesinberry, and he was sentenced to death. The Supreme Court of Virginia affirmed the convictions and sentence of death. Quesinberry v. Comm., 241 Va. 364, 402 S.E.2d 218 (1991). The United States Supreme Court denied certiorari. Quesinberry v. Virginia, 502 U.S. 834 (1991).

Quesinberry filed his state habeas corpus petition with the help of two court-appointed attorneys on April 20, 1993. On March 3, 1994, the petition was denied. The Supreme Court of Virginia denied his appeal on December 8, 1994, and his petition for rehearing on January 13, 1995. The United States Supreme Court denied certiorari on June 19, 1995. Quesinberry v. Murray, 515 U.S. 1145 (1995).

On April 19, 1996, Quesinberry, with the assistance of court-appointed counsel, filed his first federal petition for a writ of habeas corpus. On October 20, 1997, the district court dismissed the petition, explaining its reasons in a 53-page memorandum opinion. It subsequently granted a certificate of probable cause. This appeal followed.

Quesinberry raises four issues, which he describes as follows:

1. The district court erroneously held that Quesinberry could not establish cause to explain the procedural default resulting from the refusal of state habeas counsel to pursue meritorious claims.

2. The district court erred when it applied a procedural bar to Quesinberry's claim that the trial court violated Quesinberry's constitutional rights when it (i) inadequately instructed jurors regarding Quesinberry's Fifth Amendment rights, (ii) received the jurors' verdicts based on the inadequate instructions, (iii) released the jurors from the guilt phase proceedings, (iv) denied Quesinberry's request for a mistrial, and (v) inadequately recharged the jurors.

3. The district court erred in holding as a matter of law that trial counsel were not ineffective in failing to interview Eric Hinkle or otherwise discover the information he possessed regarding the trial issues.

4. The district court erred in finding that good cause had not been shown to grant Quesinberry's discovery-related motions.

We review the district court's conclusions of law de novo, and we will not set aside its findings of fact unless they are clearly erroneous. Smith v. Angelone, 111 F.3d 1126, 1131 (4th Cir. 1997); Fed. R. Civ. P. 52. We agree with the district court that the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) is inapplicable because Quesinberry's federal petition for a writ of habeas corpus was pending prior to the effective date of the AEDPA. See Lindh v. Murphy, 117 S.Ct. 2059, 2063 (1997).

II

After he was convicted, Quesinberry appealed to the Virginia Supreme Court, but he did not allege ineffective assistance of his trial counsel. Quesinberry then filed a petition for habeas corpus in state court, complaining for the first time about numerous deficiencies in his counsel's representation during trial.

4

Quesinberry's first issue in his federal proceeding is premised on what he calls the abandonment of his state habeas counsel who declined to appeal to the state appellate court several claims including ineffective assistance of counsel during his trial. The federal district court, finding no cause, held that Quesinberry's claims were defaulted because he did not assign them as error in his petition to the Virginia Supreme Court pertaining to his appeal from the dismissal of his state habeas corpus. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (requiring cause, among other reasons, for excusing a default).

The difficulty with Quesinberry's first issue is the lack of a constitutional right to counsel in a collateral attack upon his conviction. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Inasmuch as Quesinberry had no constitutional right to counsel to represent him in state habeas proceedings, he cannot allege deficiencies of his state habeas counsel as a cause for excusing his default. Mackall v. Angelone, 131 F.3d 442, 446-49 (4th Cir. 1997). In agreement with the district court, we are not persuaded by Quesinberry's arguments that we should depart from the clearly established precedent that brings about this result.

III

Quesinberry bases his second claim on the trial court's alleged infringement of his Fifth Amendment right not to testify. He asserts that the trial court did not properly instruct the jury on this issue.

At the beginning of the trial the state judge told the jury that Quesinberry might not testify and that if he did not testify "the Fifth Amendment of the Constitution prevented the jury from considering that." See Quesinberry, 241 Va. at 375, 402 S.E.2d at 225. During the course of the proceedings defense counsel presented an instruction that states "[t]he defendant does not have to testify. The exercise of that right cannot be considered by you." See Quesinberry, 241 Va. at 375 n.4, 402 S.E.2d at 225 n.4. Quesinberry chose not to testify.

When the trial judge read the jury instructions, he inadvertently omitted the instruction that Quesinberry's failure to testify could not be held against him. Apparently neither the prosecution nor the defense called the omission to the judge's attention. After the jury

5

returned its verdict of guilt in the first phase of the trial, the judge told the jury to go to lunch in the custody of the sheriff and reminded them:

> [B]ecause the case is still going on and there are other matters of such severity that you must consider, do not talk among yourselves; do not let anybody talk to you; do not let anybody approach you; do not respond to any comments; try to avoid what would be inadvertent communication from anyone of any source.

See Quesinberry, 241 Va. at 374, 402 S.E.2d at 225. While at his own lunch, the trial judge realized that he had omitted to give the instruction pertaining to the defendant's right not to testify. The trial judge notified counsel of the omitted instruction. Quesinberry moved for a mistrial, and the judge denied the motion. The judge then told the jury: "You are instructed that the defendant does not have to testify. The exercise of that right cannot be considered by you." Quesinberry, 241 Va. at 376, 402 S.E.2d at 226. The judge also told the jury to consider this instruction along with the other instructions and the evidence. He asked them to retire to their room and to state their verdict in written form. In about 15 minutes, the jury returned with their verdict, finding Quesinberry guilty. Quesinberry, 241 Va. at 377, 402 S.E.2d at 226.

On his direct appeal to the Supreme Court of Virginia, Quesinberry assigned error to the trial judge's denial of his motion for a mistrial. The Supreme Court carefully and fully recounted the facts. See Quesinberry, 241 Va. at 374-77, 402 S.E.2d at 225-26. It then held:

> Quesinberry contends that because Code § 19.2-264.3 creates a bifurcated proceeding in a capital murder trial, the jury was discharged from its responsibilities on the issue of guilt after its initial verdict had been returned and, therefore, the trial court should not have reinstructed the jury. We disagree.
>
> We have consistently applied the rule . . . that once a jury is discharged and leaves the presence of the court, it cannot be reassembled to correct a substantive defect in its verdict.

6

> Here, however, the jury had neither been discharged nor left the presence of the court. . . . The sanctity of the jury was neither violated nor subjected to any hazard of suspicion. It was the trial court's responsibility to reinstruct the jury, and we hold that the court properly discharged that duty.

Quesinberry, 241 Va. at 377, 402 S.E.2d at 226 (citations omitted).

In his assignments of error and in his brief on direct appeal, Quesinberry did not refer to any federal constitutional provision. Instead he cited Virginia Code Ann. § 19.2-264.3 (bifurcated trials) and Virginia case law dealing with discharge of juries in trials which were not bifurcated. The Virginia Supreme Court's disposition was based on an independent state law ground. Discussing whether the jury was discharged as a matter of Virginia law, it held that in a bifurcated trial while the jury was in the custody of the sheriff and within the control of the court, it had not been discharged.

Quesinberry again raised the same issue in his federal petition for habeas corpus. In these proceedings he adverted to his federal constitutional right not to testify. But he premised his argument on the assertion that the jury was discharged at the conclusion of the guilt phase of the bifurcated trial and, consequently, he argues, the district court erred in belatedly instructing them. These arguments fail because the Virginia Supreme Court held that as a matter of Virginia law the jury was not discharged.

Because Quesinberry did not contend on direct appeal that the reinstruction violated a federal constitutional right, he has failed to exhaust the claim he now seeks to raise. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that argument to state court that an evidentiary ruling by trial court violated state law was insufficient to exhaust claim that the ruling constituted a violation of a federal constitutional right, and rejecting the argument that similarity of claims is adequate to exhaust). Because presentation of this claim to the state court at this juncture would be fruitless, see Va. Code Ann. § 8.01-654(B)(2) (Michie Supp. 1998) (providing that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition"), it is properly considered to be procedurally barred. See

7

George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."). We therefore hold this claim to be procedurally defaulted.

This case is not unlike Summers v. United States , 11 F.2d 535 (4th Cir. 1926), in which the district court realized, after the jury had rendered its verdict, that the defendant was absent when it gave a supplementary charge. Summers, 11 F.2d at 585-86. Although the court had discharged the jury, it had remained in the courtroom with no opportunity to discuss the case with others, without the intervention of any other business. The court then reinstructed the jury, which retired again and brought back the same verdict of guilty. Id. at 586. On appeal this court held, as a matter of federal law, that as long as the jury "remains an undispersed unit, within control of the court," the jury had not been finally discharged.

In the instant case, the district court properly dismissed this issue.

IV

Quesinberry's third claim is that the district court erred in holding that trial counsel was not ineffective in failing to interview Hinkle or otherwise discover information he possessed regarding the murder. He claims that "Trial Counsel were wholly unprepared to respond to the Commonwealth's use of Hinkle at trial or to adequately cross-examine Hinkle." Appellant's Br. at 60. Quesinberry asserts that if trial counsel were properly prepared, they would have brought out that prosecutors coached Hinkle to testify that Quesinberry struck Haynes more than once.

The Commonwealth used Hinkle only in the penalty stage of the trial. His testimony did not substantially deviate from Quesinberry's confession. Quesinberry's counsel had a private investigator interview Hinkle twice; then Hinkle's counsel objected to additional interviews. Quesinberry's counsel also moved for discovery, and the Commonwealth opened its files which provided the transcript of Hinkle's interview with the police. Quesinberry's counsel cross-examined Hinkle on several key points. Hinkle testified that he saw Quesinberry strike

8

the victim with a pistol once, but he heard more blows. Hinkle admitted on cross-examination that he had previously stated that Quesinberry hit Haynes only once, that Hinkle had been drinking the night of the murder, and that Hinkle expected to benefit from his testimony.

Hinkle's testimony is consistent with the medical examiner's; based on the autopsy and photographs taken by the medical examiner, the Supreme Court found that there were at least two blows to the victim's head. This finding is binding on us. Sumner v. Mata, 449 U.S. at 546-47. The district court held that Quesinberry could not establish prejudice. Strickland v. Washington, 466 U.S. 668 (1984), requires petitioner to show that his counsel's performance was objectively unreasonable and that he was prejudiced by counsel's performance. Strickland, 466 U.S. at 687-89, 694. To establish prejudice a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If there is no prejudice, a court need not review the reasonableness of counsel's performance. Id. at 697.

Quesinberry fails to meet the Strickland prejudice standard. As the district court noted, trial counsel were aware that by cross-examining Hinkle exhaustively they would be opening up testimony concerning the vileness of Quesinberry's acts. Trial counsel knew of damaging information that Hinkle had provided to the private investigator, and they were unsure if the prosecution possessed the same knowledge. Moreover, discrepancies in Hinkle's versions of events were relatively minor in light of all the evidence against Quesinberry. See Strickland, 466 U.S. at 695 ("In making this[prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."). The district court did not err.

V

Quesinberry's final assignment of error pertains to the district court's denial of his request for discovery. Rule 6(a) of the Rules Governing Section 2254 Cases requires a habeas petitioner to show good cause before he is afforded an opportunity for discovery. A district court's decision on good cause is reviewed for an abuse of discretion. Bracy v. Gramley, 117 S.Ct. 1793, 1799 (1997). Good cause

9

is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief. Harris v. Nelson, 394 U.S. 286, 300 (1969); Bracy, 117 S.Ct. at 1799 (approving the Harris standard).

Quesinberry says that he made specific allegations establishing good cause justifying discovery. These allegations dealt with the alleged ineffectiveness of his counsel, influences the prosecution allegedly brought to bear on Hinkle, and the abandonment of defaulted claims by state habeas counsel. We have dealt with these subjects in Parts II and IV of this opinion. His requests for discovery are without merit, and the district court did not abuse its discretion in denying them.

VI

The judgment of the district court is affirmed.

AFFIRMED

10