Terrence Leslie BONDS, Petitioner,

v.

J.V. BEALE, Respondent.

No. CIV. A. 00–864–AM.

United States District Court,
E.D. Virginia.
Alexandria Division.

May 16, 2001.

Terrence L. Bonds, Roanoke, VA, pro se.

John Hill McLees, Jr., Office of Atty. Gen., Richmond, VA, for Respondent.

## REVISED MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Respondent's Motion to Dismiss. The four primary issues presented in the instant action under 28 U.S.C. § 2254 are: (1) whether petitioner's ("Bonds") appellate counsel was ineffective for failing to raise federal and state speedy trial claims on direct appeal; (2) whether Bonds' trial counsel was ineffective for failing to suffi-

ciently cross-examine Bonds' accuser; (3) whether the trial court erred in permitting evidence of Bonds' prior conduct; and (4) whether the trial court erred in denying Bonds' motion to strike based on lack of sufficiency of the evidence.

For the reasons discussed below, Bonds has failed to demonstrate that federal habeas relief is warranted. Accordingly, the Court must grant Respondent's Motion to Dismiss.

## I. Background

The facts, as stated by the Court of Appeals of Virginia and as they appear in the record, are as follows.[1] Bonds and the victim, Linda Kidd ("Kidd"), had been involved in a relationship for sixteen years prior to the events leading to the underlying conviction. Kidd testified that initially the relationship was good and that Bonds was the father of her children. On March 13, 1996, however, they were "on the borderline of splitting up" because Bonds "hit [Kidd] for the last time." That morning, Bonds called Kidd at work and asked her to come home because he had an emergency. When Kidd arrived home, Bonds was drinking beer in the kitchen. They argued, and Kidd told Bonds she was going to return to work. Bonds grabbed her from behind, threw her on the floor, and pinned her arms behind her back. Bonds removed her clothes and told her "to give him what he wants; if not, he'll take what he wants." Kidd understood that Bonds wanted her to have sex with him, but she refused and "tried to fight him off." Kidd got away and tried to run out the door, but

---

1. "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (holding presumption of correctness applies to facts found by appellate as well as trial courts). In the instant case, the applicant has not met his burden of rebutting this presumption by clear and convincing evidence, and, therefore, factual determinations of the Court of Appeals of Virginia are presumed correct. *See id.*

Bonds caught her, pushed her on the sofa, and held her down. Again, Kidd tried to leave, but Bonds jumped up and hit her above her eye with a closed fist. Bonds told Kidd to call and tell her employer that she would not be returning to work, but Kidd called 911 instead.

In response, Bonds testified that his relationship with Kidd began to change when he noticed that Kidd was regularly late coming home from work. Kidd told him she was working overtime, although Bonds saw that her pay stubs did not include overtime pay. Bonds admitted that he called Kidd at work on March 13, 1996 and asked her to come home. Bonds stated that he did so because he "was sick and tired of her sleeping around." Bonds testified that he asked Kidd to pack her things and leave. Bonds admitted that they argued and that, when Kidd turned and tried to walk away, he grabbed her by the hand and pulled her back because he was not finished talking. He admitted "wrestling" with her for five or six minutes, knocking over furniture and knocking pictures off the wall. Bonds denied, however, removing Kidd's clothes or blocking her way to the doorway.

In connection with events of March 13, 1996, a preliminary hearing was conducted on August 28, 1996. Bonds was released on recognizance. Bonds was then indicted by a grand jury on charges of attempted rape, abduction, and assault and battery, on or about October 10, 1996. An Order was entered on November 8, 1996, on a defense motion, continuing the case to February 7, 1997. The case was again continued from February 7, 1997, to February 13, 1997, without objection from the defense. On February 13, 1997, on a joint motion, the case was continued to April 11, 1997. On April 11, 1997, however, Bonds failed to appear in accordance with his recognizance. On May 30, 1997, when Bonds was brought to court on a capias, the court issued an order, on a defense motion, continuing the case until August 13, 1997. On August 13, 1997, the Commonwealth obtained a continuance over defense counsel's objections, until December 1, 1997.

On December 1, 1997, Bonds was tried by jury and found guilty of abduction, and assault and battery. Bonds was acquitted of the charge of attempted rape. On January 26, 1998, the Circuit Court for the City of Hampton entered an order sentencing Bonds to three years in prison for abduction, and ninety days in jail for assault and battery. Bonds petitioned the Court of Appeals of Virginia on direct appeal; however, his petition was refused on August 6, 1998. The Supreme Court of Virginia then refused his petition for appeal on January 20, 1999. On October 29, 1999, Bonds filed a petition for state habeas relief in the Supreme Court of Virginia. His claims were dismissed on the merits by the Supreme Court of Virginia on March 14, 2000. Bonds then filed a petition for federal habeas relief in this Court, raising the same grounds, on May 18, 2000.

## II. Grounds Raised

Bonds raises the following five grounds in the instant petition for federal habeas relief:

(1) Appellate Counsel was Ineffective in Failing to Raise a Constitutional Speedy Trial Claim on Appeal;

(2) Appellate Counsel was Ineffective in Failing to Raise a Virginia Statutory Right to a Speedy Trial Claim on Appeal;

(3) Defense Counsel Failed to Raise Bonds' Sixth Amendment Right to Confront and Cross–Examine his Accuser at Trial;

(4) Trial Court Erred in Overruling Defendant's Objection to Permit Com-

monwealth to Enter into Evidence Testimony by the Complaining Witness Relating to Prior Acts of the Defendant for Purpose of Showing that Defendant is of Bad Character; and

(5) Trial Court Erred in Denying the Defendant's Motion to Strike the Evidence and in Denying Defendant's Motion to Set Aside the Jury's Verdict as Being Contrary to the Law and Evidence.

Each of the grounds raised by Bonds is addressed in turn.

### III. Standard of Review

 Because the state courts have already ruled on the issues raised, Bonds' petition for federal habeas relief is governed by the standards for federal habeas relief as codified in 28 U.S.C. § 2254. Therefore, a writ may issue on these claims only if he demonstrates that the state courts' determinations "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States." *Vick v. Williams,* 233 F.3d 213, 216 (4th Cir.2000) (citing § 2254(d)). Habeas relief is thus limited to these two circumstances. Under the "contrary to" clause of § 2254(d), "if the state arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case different from the Supreme Court on a set of materially indistinguishable facts, the federal court may grant the writ of habeas corpus." *Id.* at 216 (citing *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (internal quotations omitted). The alternative "unreasonable application" of "clearly established Federal law," basis for granting the writ exists where "the state court identifies the correct governing legal principle from the

Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 216 (citing *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495) (internal quotations omitted). And significantly, "a writ may not issue because a federal court concludes, in its own judgment, that the state court decision applied federal law erroneously or incorrectly." *Id.* at 216 (citing *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495) (internal quotations omitted). "Rather, the state court's application must be objectively unreasonable." *Id.* at 216.

### IV. Analysis

A. Appellate Counsel was Ineffective in Failing to Raise a Constitutional Speedy Trial Claim on Appeal.

Bonds first asserts that he has been unconstitutionally harmed by his appellate counsel's failure to raise a speedy trial challenge on direct appeal. Bonds contends that this resulted in a violation of his Fifth and Sixth Amendment Rights. Initially, Bonds' claims as they pertain to the Fifth Amendment must be dismissed, as they are meritless. Bonds was tried and convicted in a state court, and, therefore, his speedy trial challenge is brought under the Sixth Amendment, extended to state trials through the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

 As Bonds' ineffective assistance of counsel claims have already been considered and denied by the Supreme Court of Virginia, in his state habeas petition, Bonds must be able to show that the state court's determination was either contrary to, or an unreasonable application of, clearly established federal law. *See* § 2254(d). As the Supreme Court of Virginia applied *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),

in reaching its decisions, the correct legal standard was applied. Accordingly, the only remaining question is whether the Supreme Court of Virginia's application was unreasonable in light of clearly established federal law.

▌ In considering an ineffective assistance of counsel claim, a court must determine (1) "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, defined as falling below "an objective standard of reasonableness," *id.* at 687–88, 104 S.Ct. 2052, and (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "The petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." *Spencer v. Murray,* 18 F.3d 229, 232–33 (4th Cir.1994). Moreover, "[i]f there is no prejudice, a court need not review the reasonableness of counsel's performance." *Quesinberry v. Taylor,* 162 F.3d 273, 278 (4th Cir.1998). Additionally, "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, and the Court must "presume that challenged acts are likely the result of sound trial strategy." *Spencer,* 18 F.3d at 233. Furthermore, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." *Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir.1993). Because the asserted grounds are without merit, the Supreme Court of Virginia's application of *Strickland* was not unreasonable.

▌ Bonds contends that the delay between May 30, 1997, the day he was brought into court on a capias, and December 1, 1997, the day he was tried, violated his Sixth Amendment right to a speedy trial, and that his appellate counsel was constitutionally ineffective for not raising the issue on direct appeal. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. The Supreme Court has identified four factors that should be balanced in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "These factors are (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *United States v. Grimmond,* 137 F.3d 823, 827 (4th Cir.1998) (citing *Barker,* 407 U.S. at 530, 92 S.Ct. 2182). "In order to prevail on his claim, [Bonds] must establish that on balance the four separate factors weigh in his favor." *Id.* at 827 (internal quotations omitted).

▌ "The first factor also acts as a threshold requirement." *Id.* (citing *Doggett v. United States,* 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. Although this Court is not bound by their decisions, Virginia courts have held that "[a] process which results in a trial on the merits within the statutorily described time does not support a presumption of prejudice." *Sheard v. Commonwealth of Virginia,* 12 Va.App. 227, 403 S.E.2d 178, 180 (Va.App.1991). In the instant case, the statutorily described time appears in Va.Code Ann. § 19.2–243 (2000). According to Va.Code Ann.

§ 19.2–243, because Bonds was not held in custody continuously after his preliminary hearing, trial was required to be commenced within nine months from the date such probable cause was found. Excluded from this time, however, is time which a continuance is granted "on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth ... or by reason ... of [the accused's] failing to appear according to his recognizance." VA. CODE ANN. § 19.2–243(4).

In the instant case, Bonds' preliminary hearing occurred on August 28, 1996. Seventy-two days passed between this date and the date a continuance was granted on motion by defense counsel, November 8, 1996. The limitations period imposed thus began to toll on this date. *See* VA. CODE ANN. § 19.2–243(4). The defense's motion resulted in a continuance until February 7, 1997. Additional continuances were then granted again on February 7, 1997, and February 13, 1997, either without objection by the defense or upon a joint motion, thus further tolling the limitations period. *See id.* These motions resulted in a continuance until April 11, 1997. On April 11, 1997, Bonds failed to appear according to his recognizance. The limitations period was thus again tolled, until Bonds was brought to court on a capias, on May 30, 1997. *See id.* A defense motion on this date further continued the case until August 13, 1997, further tolling the limitations period. *See id.* On August 13, 1997, the Commonwealth motioned for a further continuance, requesting time in which to secure an expert witness. Defense counsel made a timely objection, but the court granted the Commonwealth's motion and the case was continued until December 1, 1997, when Bonds was tried. Thus, as defense counsel objected to the Commonwealth's motion,

between August 13, 1997, and December 1, 1997, the limitations period began to run again. Specifically, an additional one-hundred and ten days passed between August 13, 1997, and December 1, 1997, for a total of one-hundred and eighty-two days accrued towards the limitations period imposed by § 19.2–243. This accrued period is well within the nine-month limitations period.

Thus, as the limitations period imposed by § 19.2–243 is satisfied, it does not appear that the delay in bringing Bonds to trial was presumptively prejudicial. The satisfaction of Virginia statutory requirements does not, however, necessarily bind this Court to a finding that the right to a speedy trial under the Sixth Amendment has been satisfied. Nonetheless, the remaining three factors articulated in *Barker* do not weigh in Bonds' favor. With regard to the second factor, the Commonwealth asked for the continuance on August 13, 1997, so that an expert witness could be subpoenaed. Specifically, the Commonwealth indicated that the expert witness that they intended to call had had a death in her family, and thus was unavailable for trial. Although defense counsel indicated that the Commonwealth had had several months to secure the expert witness's presence, the presiding judge granted the motion. Although this reason is a neutral reason, because it does not appear to be a deliberate delay by the Commonwealth, "it should nevertheless be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A missing witness, however, "should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

With regard to the third factor, Bonds' attorney implicitly raised the issue of Bonds' speedy trial rights upon objecting to the Commonwealth's motion

for a continuance on August 13, 1997. With regard to the fourth and final factor, that of prejudice to the defendant, there are three interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* at 532, 92 S.Ct. 2182. In the instant case, Bonds has failed to demonstrate that he was prejudiced, in any capacity, by the delay in his coming to trial.

Bonds has failed to demonstrate that the four separate factors weigh in his favor. Although Bonds' attorney does appear to have raised the issue of a speedy trial at the August 13, 1997, hearing, the delays involved were not excessive, the Commonwealth's reason for delay was neutral, and Bonds suffered no clear prejudice. As the speedy trial assertion is without merit, Bonds has also failed to demonstrate that he was prejudiced by his appellate counsel's failure to raise this issue on direct appeal. Therefore, the Supreme Court of Virginia's determination that Bonds' appellate counsel's apparent decision not to raise the speedy trial assertion on direct appeal was not ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. Accordingly, the Court will not disturb the determinations of the Supreme Court of Virginia in this regard.

B. Appellate Counsel was Ineffective in Failing to Raise a Virginia Statutory Right to a Speedy Trial Claim on Appeal.

Bonds next contends that his appellate counsel was constitutionally ineffective in failing to raise a speedy trial issue under Va.Code Ann. § 19.2–243 on appeal. As discussed in subsection A above, the limitations period imposed by Va.Code Ann. § 19.2–243 was satisfied. As the speedy trial assertion under Va.Code Ann. § 19.2–243 is without merit, Bonds has failed to demonstrate that he was prejudiced by his appellate counsel's failure to raise this issue on direct appeal. Therefore, the Supreme Court of Virginia's determination that Bonds' appellate counsel's apparent decision not to raise the speedy trial assertion under Va.Code Ann. § 19.2–243 on direct appeal was not ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. Accordingly, the Court will not disturb the determinations of the Supreme Court of Virginia in this regard.

C. Defense Counsel Failed to Raise Bonds' Sixth Amendment Right to Confront and Cross–Examine his Accuser at Trial.

 Bonds next contends that his defense counsel at trial was constitutionally ineffective in failing to raise a Sixth Amendment challenge to what he contends was the trial judge's unconstitutional limitation on his ability to confront and cross-examine Kidd. The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him ...." U.S. Const. amend. VI. The Supreme Court has made clear that the right of confrontation is secured for defendants in state as well as federal criminal proceedings. *See Quinn v. Haynes,* 234 F.3d 837, 847 (4th Cir.2000) (citing *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). This

right "means more than being allowed to confront the witness physically." *Id.* at 847 (quoting *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Indeed, "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* at 847 (quoting *Davis*, 415 U.S. at 315–16, 94 S.Ct. 1105). Thus, "it is clear from Supreme Court precedent that the Sixth Amendment guarantees the right of a criminal defendant to reasonable cross-examination, when otherwise appropriate, for the purpose of impeaching the credibility of key witnesses." *Id.* at 847 (citing *Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988)). Specifically, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Olden*, 488 U.S. at 231, 109 S.Ct. 480 (internal quotations omitted).

■■■ There are, however, limitations that the trial court can impose on the scope of defense counsel's cross-examination and presentation of evidence related to the impeachment of such witnesses, and still be within the confines of the Sixth Amendment. *See Quinn*, 234 F.3d at 847. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 847 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

■■■ The analysis of an identified Confrontation Clause error is subject to the harmless error standard. *See Delaware*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. "The harmless error standard on federal habeas review differs from the standard used on direct review, and this difference reflects the state's interest in the finality of convictions that have survived direct review within the state court system." *Satcher v. Pruett*, 126 F.3d 561, 567 (4th Cir.1997) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)) (internal quotations omitted). "On habeas review a trial error can be reversed only if the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 567 (quoting *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710) (internal quotations omitted). "[I]f the federal habeas court is in grave doubt about whether the trial error had a substantial and injurious effect or influence on the verdict . . . the error is not harmless." *Id.* at 567 (quotations omitted).

In the instant action, Bonds asserts that the Confrontation Clause was violated in that he was prohibited from presenting evidence of Kidd's "affairs and pregnancy" to the extent that he argues was necessary to sufficiently impeach her credibility. He claims that had he been able to present further evidence, the jury would have been exposed to her motive to fabricate the charges. Specifically, Bonds appears to contend that his Sixth Amendment rights were violated as a result of two instances.

■■■ First, when the trial judge sustained an objection to the defense counsel's following question to Kidd: "When did you find out that you were pregnant with Mr. Peterson's baby?" (Tr. at 57.) Mr. Peterson ("Peterson") was apparently the man with whom Kidd was allegedly having an affair. Second, during direct examination

Bonds' counsel asked Bonds why he called Kidd to come home on March 13, 1996. Bonds testified that he was "sick and tired of the affair that she was having, and she was sleeping around, sneaking around. She neglected my children, the house, she didn't cook, she didn't clean. I caught her with her boyfriend on two occasions." (Tr. at 91–92.) The Commonwealth objected, but the trial judge overruled the objection and allowed the testimony. (Tr. at 92.) Soon thereafter, however, following a Commonwealth objection and a sidebar with the Commonwealth and defense counsel, the trial judge appears to have instructed defense counsel to limit his examination of the alleged affairs. (Tr. at 92–93.)

Although it does not appear that either of these instances, taken in the context of the entire trial, rise to the level of a Confrontation Clause violation, the Court need not make this determination. Even assuming that these two instances did result in a Confrontation Clause violation, the assumed errors did not have a substantial and injurious effect or influence in determining the jury's verdict.

Specifically, Bonds was permitted to testify on a number of facts regarding Kidd, presenting the significant likelihood that Kidd was involved in an affair. Bonds testified on direct that he observed that Kidd was coming home late from work, although when he called her employer he was told she had not worked late and her paycheck stubs did not reflect any overtime. (Tr. at 90–91.) Bonds then testified that Kidd, in response to his suspicions, hid her paycheck stubs. (Tr. at 91.) As indicated, Bonds was also permitted to testify that he was tired of Kidd having an affair, as well as failing to tend to their children and home. (Tr. at 91–92.) Moreover, Bonds testified that he had caught Kidd on two occasions with her boyfriend.

(Tr. at 92.) Finally, Bonds testified that after the altercation, he heard a horn blow outside, and then saw Kidd run outside to the car where Peterson was waiting. (Tr. at 97). Additionally, on cross-examination, Bonds' counsel was able to elicit from Kidd that she had a relationship with Peterson after the altercation, but before Bonds and Kidd were married. (Tr. at 57.) Thus, there was a significant amount of evidence suggesting Kidd had been involved in an affair at the time of the altercation. Therefore, the theoretical impact of the information suggested by Bonds is negligible, at best.

The impact of any Confrontation Clause violation was further limited by Bonds' own testimony and the outcome of the trial. Bonds, on direct examination, admitted to grabbing Kidd's hand and pulling her back when she tried to leave, "to let her know I wasn't finished talking to her," and to having a physical altercation with Kidd. (Tr. at 94.) Bonds did, however, specifically deny having attempted to rape Kidd.

The verdict reflects the successful impact of the defense's attacks on Kidd's credibility. Specifically, Bonds was acquitted of attempted rape. The fact that Bonds was convicted of assault and battery, and abduction, can be linked as much to Bonds' own testimony as it can to Kidd's. Thus, because Bonds was able to present a significant amount of evidence in order to attack Kidd's credibility, which was successful as exhibited by the attempted rape acquittal, and because his own testimony presented evidence of assault and battery and abduction, any Confrontation Clause error was harmless. Accordingly, any challenge regarding these errors, through Bonds' trial counsel's failure to raise the issue or as a direct challenge, is meritless. As Bonds was not prejudiced by his trial counsel's failure to

raise a Confrontation Clause violation at trial, Bonds has not demonstrated that federal habeas relief is warranted as a result of ineffective assistance of counsel at trial. Therefore, the Supreme Court of Virginia's determination that Bonds' counsel's apparent decision not to raise the asserted Confrontation Clause violation at trial was not ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. Accordingly, the Court will not disturb the determinations of the Supreme Court of Virginia in this regard.

D. Trial Court Erred in Overruling Defendant's Objection to Permit Commonwealth to Enter into Evidence Testimony by the Complaining Witness Relating to Prior Acts of the Defendant for Purpose of Showing that Defendant is of Bad Character.

 Bonds next contends that the trial court erred in overruling defense counsel's objection to permitting the Commonwealth to elicit testimony from Kidd regarding the history of her relationship with Bonds. The Supreme Court has stated that, when reviewing questions of the admissibility of evidence in state proceedings, when conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Consistent with this standard, the Fourth Circuit has held that "the admissibility of evidence ... [is a matter] of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal

habeas corpus petition is not to serve as an additional appeal." *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir.1993) (quoting *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.1960)).

In the instant case, Bonds is challenging certain testimony that was elicited by the Commonwealth on direct examination of Kidd. Specifically, the Commonwealth asked Kidd why their relationship failed. Kidd answered, "He didn't know how to keep his hands to himself. And I told him, as long as he continued to fight me, I won't be with him." (Tr. at 39.) Furthermore, Kidd testified that they were on the borderline of splitting up on March 13, 1996, because Bonds had "hit me for the last time." (Tr. at 41.) The Court of Appeals of Virginia, on their review of this issue, held that,

> Evidence of other bad acts is admissible if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged.

*Bonds v. Commonwealth of Virginia*, 0213–98–1, at 1 (Va.Ct.App. August 6, 1998). Bonds disputes this analysis, and contends that the evidence was admitted to show that he committed or likely committed the particular crime charged.

Bonds' contention raises no federal question, as it fails to demonstrate that the admission of such evidence impugned fundamental fairness or infringed on specific constitutional protections. In any case, the Federal Rules of Evidence would likely permit such evidence to be admitted. Under Fed R. Evid. 404(b), evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Bonds, in his criminal trial, did not dispute that an

altercation occurred, or that he attempted to restrain Kidd by grabbing her arm. Bonds' version of the altercation appears to be, however, that they got into an argument that evolved into a mutual physical fight. In other words, he appears to dispute his intent to commit the crimes he was charged with and convicted of. Kidd's testimony regarding their relationship, and their past disputes, could conceivably and permissibly go to showing Bonds' intent.

Thus, Bonds' contention regarding the admission of his relationship with Kidd does not give rise to a federal question. Therefore, his contention clearly does not demonstrate that the state courts' determinations were contrary to or an unreasonable application of clearly established federal law, as established by the Supreme Court of the United States. Accordingly, the Court will not disturb the state courts' determinations on these matters.

E. Trial Court Erred in Denying the Defendant's Motion to Strike the Evidence and in Denying Defendant's Motion to Set Aside the Jury's Verdict as Being Contrary to the Law and Evidence.

■■■ Bonds' final challenge asserts that the trial court erred in denying defense counsel's motion to strike the evidence and motion to set aside the jury verdict as being contrary to the law and evidence. Essentially, Bonds' challenge asserts that he was convicted on constitutionally insufficient evidence. A sufficiency inquiry "does not require a court to ask itself whether it believes that the evidence at trial established guilty beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781. Moreover, as the Court of Appeals of Virginia has previously addressed and ruled on this issue, the deferential standard under § 2254(d) applies.

■■■ In the instant case, the decision of the Court of Appeals of Virginia with regard to the sufficiency of the evidence was neither contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. *See* § 2254(d). The Court is unable to find that, in light of Kidd's testimony, although there may have been some inconsistencies, and in light of Bonds' own testimony, that there was insufficient evidence to convict Bonds of abduction and assault and battery. Specifically, as discussed previously, Bonds' own testimony acknowledged the struggle and that he had restrained Kidd by grabbing her arm. Accordingly, the Court will not disturb the state courts' determinations in this regard.

## V. Conclusion

Accordingly, for the reasons discussed above, respondent's Motion to Dismiss must be granted. An appropriate Order will issue.